1
2
3
4 **-O-**
5
6
7
8 UNITED STATES DISTRICT COURT
9 CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| FREDDIE VASQUEZ, ) | Case No. CV 08-5305-OP |
| Plaintiff, ) | |
| v. ) | MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

**I.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action.  (See Dkt. Nos. 8, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

### DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1.      Whether the Administrative Law Judge ("ALJ") properly evaluated Plaintiff's cognitive impairment;

2.      Whether the ALJ properly evaluated Plaintiff's credibility;[3] and

3.      Whether the ALJ developed the record regarding the medical necessity of Plaintiff's assistive device for ambulation.

(JS at 3, 14-17.)

## II.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452

---

[3] Plaintiff contends the ALJ improperly evaluated his credibility within the claim regarding the medical necessity of an ambulatory assistive-device. (JS at 17.) The Court will address the ALJ's evaluation of Plaintiff's credibility as a separate issue.

1   (9th Cir. 1984).

2                                    **III.**

3                              **DISCUSSION**

4   **A.    The ALJ Properly Assessed Plaintiff's Cognitive Impairments.**

5          Plaintiff contends that the ALJ erred in his assessment of Plaintiff's

6   cognitive impairments.  (JS at 3-7.)  Given Dr. Kim Coldman's test results

7   regarding Plaintiff's intellectual functioning, Plaintiff argues the ALJ had no basis

8   to conclude in the residual functional capacity ("RFC") assessment that Plaintiff

9   could still perform simple, routine tasks.  (Id. at 3-6)  Plaintiff further argues that

10  the ALJ misread the objective evidence and improperly relied on the findings of

11  the consultative examiners, Dr. Coldman and Dr. Henry Amado.  (Id. at 3-7)

12  Plaintiff also contends that the ALJ failed to fulfill his burden of identifying

13  occupations within Plaintiff's functional capacity at step five of the sequential

14  evaluation procedure.  (Id. at 6-7.)  Specifically, Plaintiff argues that the

15  occupations identified by the vocational expert ("VE") and relied upon by the ALJ

16  did not give adequate consideration to Plaintiff's borderline intellectual

17  functioning.  (Id.)[4, 5]

18         **1.    The ALJ Properly Limited Plaintiff to Simple, Routine Tasks.**

19  _____

20         [4]  Plaintiff additionally asserts that Dr. Amado's finding that Plaintiff could
    perform simple, routine tasks is inconsistent with the record and Dr. Amado's own
21  conclusions, namely that Plaintiff met the requirements of a Listing Level
22  impairment.  (JS at 6-7.)  However, there is no evidence that Dr. Amado, or any
    other examiner, ever concluded that Plaintiff's disability met the requirements of a
23  Listing Level impairment.  Thus, Plaintiff's argument is without merit.
24
25         [5]  Plaintiff also argues that he did not receive treatment for his cognitive
    limitations because his limitations are "not amenable to treatment" and because
26  "therapy does not affect organic cognitive limitations."  (JS at 3-4.)  Plaintiff offers
27  no authority for this proposition, nor does Plaintiff explain how his lack of
    treatment, even if justified, supports his contention that the ALJ erred in assessing
28  his cognitive limitations.

1    Given that Plaintiff did not set forth any evidence of mental health treatment,
2    the state agency referred Plaintiff to Dr. Coldman for a psychological evaluation,
3    and to Dr. Amado for a mental RFC assessment.  (AR at 20-22, 146-50, 179-82.)
4    On May 25, 2005, after conducting three tests to determine Plaintiff's cognitive
5    functioning, Dr. Coldman cautioned that Plaintiff's "test results should be
6    interpreted with caution. [Plaintiff] appeared to make a generally poor effort on the
7    tasks presented to him."  (Id. at 181.)  Based on the psychological evaluation, Dr.
8    Coldman found that Plaintiff had borderline intellectual functioning and
9    concluded:

10           [Plaintiff's] ability to understand, carry out and remember simple
11           instructions is not impaired.  His ability to understand, carry out and
12           remember  detailed  instructions  and  complex  tasks  is  moderately
13           impaired due to limits in his cognitive functioning. . . . The above-
14           mentioned limitations should be interpreted with caution. [Plaintiff's]
15           obtained  scores  are  inconsistent  with  adaptative  functioning.    He
16           reported that at his last job he worked mixing cement, roofing and
17           cutting bricks with a power saw.

18    (Id. at 182.)

19    On June 13, 2005, Dr. Amado completed a mental RFC assessment, finding
20    Plaintiff moderately limited in the following six areas: (i) ability to understand and
21    remember detailed instructions; (ii) ability to carry out detailed instructions; (iii)
22    ability to maintain attention and concentration for extended periods; (iv) ability to
23    complete a normal work-day and workweek without interruptions from
24    psychologically based symptoms and to perform at a consistent pace without an
25    unreasonable number and length of rest periods; (iv) ability to respond
26    appropriately to changes in the work setting; and (vi) ability to set realistic goals or
27    make plans independent of others.  (Id at 146-50.)  Dr. Amado concluded that
28    Plaintiff "[c]an sustain simple repetitive tasks with adequate pace and persistence.

4

1   Can adapt and relate to coworkers and [supervisors].  Can work with public." (<u>Id</u>
2   at 148.)

3          After summarizing and considering the medical evidence, the ALJ opined
4   that Plaintiff can perform light work.  The ALJ further stated,

5          [Plaintiff] is able to stand and sit for six hours out of an eight-hour
6          workday for each of these respective functions.  Climbing is limited to
7          occasional. [Plaintiff] can perform simple, routine tasks commensurate
8          with his education and experience.

9   (<u>Id.</u> at 21.)  Thus, the ALJ's RFC assessment is consistent with the findings of Drs.
10  Coldman and Amado, as both doctors concluded that Plaintiff could perform
11  simple, routine tasks.  (<u>Id.</u> at 148, 182.)

12         Plaintiff's claim that the opinions of Drs. Coldman and Amado were not
13  based on the medical evidence or otherwise insufficient is without merit.  Both
14  doctors conducted a comprehensive psychological examination, including
15  Plaintiff's history, subjective complaints, and objective findings.  (<u>Id.</u> at 146-50,
16  179-82.)  The opinions of consultative examiners, if supported by clinical tests and
17  observations upon examination, are substantial medical evidence and may be relied
18  upon by the ALJ in order to assess a plaintiff's limitations.  <u>See</u> <u>Andrews v.</u>
19  <u>Shalala</u>, 53 F.3d 1035, 1041-43 (9th Cir. 1995).  Despite Plaintiff's assertion, the
20  fact that Dr. Amado provided his conclusions in the form of a stamp does not
21  diminish the validity of his findings, as the findings are based upon clinical tests
22  and observations.  (AR at 146-50.)  Thus, the ALJ properly relied upon the
23  opinions of the consultative examiners.

24         To the extent that Plaintiff argues that ALJ or VE failed to adequately
25  consider Dr. Coldman's assessment of borderline intellectual functioning (JS at 5),
26  an ALJ is permitted to translate a conclusion that plaintiff has borderline
27  intellectual functioning into the "concrete restrictions" set out by the examining
28

psychologist, such as a restriction to only simple work.  See <u>Stubbs-Danielson v.</u>
<u>Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that an RFC finding for
simple, routine, and repetitive work captured the assessment of borderline
intellectual functioning).  Here, Dr. Coldman found that Plaintiff had borderline
intellectual functioning but nevertheless concluded that Plaintiff's ability to
understand, carry out, and remember simple instructions was not impaired.  (AR at
182.)  This is consistent with the ALJ's finding that Plaintiff can perform simple,
routine tasks.  (<u>Id.</u> at 21.)  Even if the ALJ were to inexplicably disregard Dr.
Coldman's conclusion as to Plaintiff's functional limitations, the ALJ's finding
that Plaintiff perform simple, routine tasks would still be consistent with Plaintiff's
borderline intellectual functioning.

Accordingly, the opinions of Drs. Coldman and Amado provide substantial
evidence to support the ALJ's finding that Plaintiff is limited to simple, routine
tasks.  Thus, there was no error.

### 2. The Commissioner Sustained His Burden of Proving There Was Other Work in the Economy that the Plaintiff Could Perform.

Plaintiff's argument that he could not perform the jobs proposed by the VE
due to his borderline intellectual functioning is without merit.  Plaintiff argues that
the one of the occupations identified by the VE has a General Learning Ability
("GLA")[6] aptitude level of 4, defined as "Lowest 1/3 Excluding Bottom 10%, Low
Degree of Aptitude Ability."  (JS at 5-7); <u>see also</u> U.S. Dep't of
Labor, <u>Dictionary of Occupational Titles</u> ("DOT"), § 706.684-022.

First, Plaintiff offers no authority for the proposition that the GLA aptitude
scale is comparable to IQ or other cognitive functioning tests which determine an

---

[6] The Department of Labor defines GLA as "The ability to 'catch on' or
understand instructions and underlying principles; the ability to reason and make
judgments."  <u>See</u> <u>Gibson v. Astrue</u>, 2008 WL 5101822, at *3 n.6 (C.D. Cal.
November 30, 2008).

6

1  individual's intellectual functioning level.  Moreover, Plaintiff fails to offer, and

2  the Court is unaware of, any authority suggesting that borderline intellectual

3  functioning, even at the lowest ten percent of the population, is equivalent or

4  comparable to GLA aptitude scales.

5       To the extent that Plaintiff argues that the jobs identified by the VE have a

6  greater reasoning level than Plaintiff is able to perform, Plaintiff's argument is still

7  without merit.  The VE testified that Plaintiff would be able to perform the jobs of

8  cashier II and bench assembler, requiring reasoning levels of three and two

9  respectively.  (AR at 266-68); DOT §§ 211.462-010, 706.684-022.

10      A job's reasoning level "gauges the minimal ability a worker needs to

11  complete the job's tasks themselves."  Meissl v. Barnhart, 403 F. Supp. 2d 981,

12  983 (C.D. Cal. 2005).  Reasoning development is one of three divisions comprising

13  the General Educational Development ("GED")[7] Scale.  DOT App. C.  The DOT

14  indicates that there are six levels of reasoning development.  Id.  Level three

15  provides that the claimant will be able to "[a]pply commonsense understanding to

16  carry out instructions furnished in written, oral, or diagrammatic form.  Deal with

17  problems involving several concrete variables in or from standardized situations."

18  DOT App. C § III.  Level two provides that the individual will be able to "[a]pply

19  commonsense understanding to carry out detailed but uninvolved written or oral

20  instructions.  Deal with problems involving a few concrete variables in or from

21  standardized situations."  Id.

22      The Court finds that the DOT's reasoning development Level two

23

24      [7]  The GED scale "embraces those aspects of education (formal and
25  informal) which are required of the worker for satisfactory job performance.  This
26  is education of a general nature which does not have a recognized, fairly specific
    occupational objective.  Ordinarily, such education is obtained in elementary
27  school, high school, or college.  However, it may be obtained from experience and
28  self-study."  DOT App. C.

requirement does not conflict with the ALJ's prescribed limitation that Plaintiff could perform only simple, routine work.  Meissl, 403 F. Supp. 2d at 984-85 (finding that reasoning development Level two does not conflict with the ALJ's prescribed limitation that plaintiff perform simple, routine tasks); see generally Hackett v.  Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding that reasoning development Level two appears to be more consistent with plaintiff's RFC of "simple and routine work tasks").  Also, based on the reasoning in Discussion, Part III.A.1 supra, the ALJ's RFC assessment also does not conflict with the findings of Drs. Coldman and Amado, opining that Plaintiff could perform simple, routine tasks.  (AR at 148, 182.)

As explained by the court in Meissl, the Social Security Regulations contain only two categories of abilities in regard to understanding and remembering things: "short and simple instructions" and "detailed" or "complex" instructions.  Meissl, 403 F. Supp. 2d at 984.  The DOT has many more gradations for measuring this ability, six altogether.  Id.  The court explained:

> To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail."  Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

Id.

Furthermore, the term "uninvolved" in the DOT level two explanation qualifies the term "detailed" and refutes any attempt to equate the Social Security Regulations' use of the term "detailed" with the DOT's use of that term.  Id.  The Meissl court also found that a plaintiff's RFC must be compared with the DOT's reasoning scale.  A reasoning level of one suggests the ability to perform slightly less than simple tasks that are in some sense repetitive.  For example, they include

1   the job of counting cows as they come off a truck or tapping the lid of a can with a

2   stick.  Id.  The ability to perform simple, repetitive instructions, therefore, indicates

3   a level of reasoning sophistication somewhere above level one.  See, e.g., Hackett,

4   395 F.3d at 1176 (holding that "level-two reasoning appears more consistent with

5   Plaintiff's RFC" to "simple and routine work tasks").  The DOT's level two

6   definition provides that the job requires the understanding to carry out detailed

7   instructions, with the specific caveat that the instructions be "uninvolved" – that is,

8   not a high level of reasoning.  Meissl, 403 F. Supp. 2d at 985.

9        Although this Court agrees that the DOT's reasoning development level

10   three might conflict with the ALJ's prescribed limitations in this case, this would

11   exclude only the job example of cashier II.  However, the Court declines to

12   consider the question of whether the higher reasoning level encompassed by the

13   cashier II would be inconsistent with Plaintiff's RFC, because even excluding this

14   position from the Court's analysis, there still exists one job example provided by

15   the VE with a reasoning development level of two – that of a bench assembler.  As

16   to that position, significant numbers of positions exist in the local and national

17   economies.[8]  Thus, any error would be harmless.  Curry v. Sullivan, 925 F.2d 1127,

18   1131 (9th Cir. 1990) (harmless error rule applies to review of administrative

19

20

21       [8]  As noted in Meissl, the Social Security Act provides that an individual is

22   disabled where his impairment prevents him from engaging in "any other kind of
substantial gainful work which exists in the national economy," meaning jobs

23   "which exist[] in significant numbers" in the area where the claimant lives.  Meissl,
403 F. Supp. 2d at 982 n.1 (quoting 42 U.S.C. § 423(d)(2)(A)).  The focus of the

24   statute, therefore, is on the number of jobs available, not the number of

25   occupations.  Id.  Here, the VE testified that there are 20,000 bench assembly jobs
locally and 715,000 nationally.  (AR at 21, 267.)  This clearly constitutes a

26   significant number.  See Barker v. Sec'y of Health & Human Servs., 882 F. 2d

27   1474, 1479 (9th Cir. 1989) (availability of 1,266 jobs held to be a significant

28   number).

1    decisions regarding disability).

2         Accordingly, the Court finds that the ALJ sustained his burden of proving

3    there is work in the economy that Plaintiff can perform.  Thus, there was no error.

4    **B.    The ALJ Properly Evaluated Plaintiff's Credibility.**

5         Plaintiff disputes the ALJ's credibility analysis as to Plaintiff's orthopedic

6    and cognitive impairments.  (JS at 17.)  Plaintiff argues that the ALJ's credibility

7    analysis consists of an "inflammatory unsupported statement."  (Id.).  The Court

8    disagrees.

9         An ALJ's assessment of pain severity and claimant credibility is entitled to

10   "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.

11   Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a

12   claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must

13   make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th

14   Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also

15   Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that

16   claimant was not credible is insufficient).

17        Under the "Cotton" test, where the claimant has produced objective medical

18   evidence of an impairment which could reasonably be expected to produce some

19   degree of pain and/or other symptoms, and the record is devoid of any affirmative

20   evidence of malingering, the ALJ may reject the claimant's testimony regarding

21   the severity of the claimant's pain and/or other symptoms only if the ALJ makes

22   specific findings stating clear and convincing reasons for doing so.  See Cotton v.

23   Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d

24   1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993);

25   Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

26        To determine whether a claimant's testimony regarding the severity of his

27   symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1)

28

ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284.

Social Security Ruling ("SSR") 96-7p[9] further provides factors that may be considered to determine a claimant's credibility such as:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p.

Here, the ALJ opined, "There are serious credibility issues in this case and it is apparent that [Plaintiff] is considerably exaggerating his complaints to receive benefits."  (AR at 20.)  The ALJ then expressly discounted Plaintiff's disabling symptoms based upon the following: (i) Plaintiff's allegations were unsupported

---

[9]  Social Security Rulings are binding on ALJs.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

1  by the objective medical evidence; and (ii) the opinions of the consultative

2  examiners, Plaintiff's past work, and Plaintiff's alleged daily activities collectively

3  suggested he was exaggerating his symptoms.  (Id. at 20-21.)

4      First, the ALJ relied upon the treatment records and the consultative physical

5  examination to discredit the alleged severity of Plaintiff's lower back and related

6  neurological problems.  (Id. at 20-21.)  The ALJ stated:

7          The clinical and diagnostic findings do not support totally disabling

8          symptoms.  The MRI and x-rays taken of [Plaintiff's] lumbar spine show

9          little in the way of significant impairments and resulting limitations.

10         Although [Plaintiff] testified that surgery was being considered for his

11         lower back, there was little indication in the record that it was seriously

12         considered.

13  (Id. at 21.)

14      The record supports the ALJ's findings.  Specifically, the ALJ relied upon

15  the findings of Plaintiff's treating physicians who conducted MRIs and

16  electromyogram reports of Plaintiff's lumbar spine, and provided normal and/or

17  unremarkable findings.  (Id. at 205, 238.)  Plaintiff's treatment recommendations,

18  notably, were conservative, mainly consisting of prescriptions for pain relievers,

19  muscle relaxants, or anti-inflammatory medications, and referrals to physical

20  therapy.  (Id. at 129-41, 198-202, 214-46.)  While Plaintiff was prescribed a single-

21  point cane as an assistive device (id. at 220, 240, 243), there is no indication that

22  Plaintiff ever pursued physical therapy, despite the recommendations of his

23  treating physicians.  None of Plaintiff's treating physicians provided any clinical or

24  diagnostic findings specific to Plaintiff's functional limitations, beyond providing

25  Plaintiff with notes excusing him from work.  (Id. at 129-41, 198-202, 214-46.)  As

26  a result, despite the findings of Plaintiff's treating physicians, they provided no

27  objective medical evidence to support Plaintiff's contentions of disabling pain,

28

which the ALJ properly relied on to discredit Plaintiff's allegations.  (Id. at 20-21.)

Moreover, the ALJ also relied upon the opinion of the consultative physician, Dr. Gabriel Fabella, to support his adverse credibility determination as to Plaintiff's allegations of disabling back pain.  (Id. at 20-21, 183-92.)  Dr. Fabella conducted a consultative physical examination, finding a limitation in Plaintiff's range of motion of the lumbar spine in flexion, extension, and lateral bending.  (Id. at 183-92.)  However, an x-ray of Plaintiff's lumbar spine showed no evidence of neurological damage, and Dr. Fabella limited Plaintiff to light work with occasional stooping or bending.  (Id.)

After summarizing and considering the medical evidence, the ALJ, as stated above, opined that Plaintiff can perform light worth with limitations at to occasional climbing, and simple, routine tasks.  (AR at 21.)  Accordingly, the ALJ considered all the medical sources, including Plaintiff's treating physicians and the consultative examiner, to discredit Plaintiff's contentions of disabling pain.  (Id.); see also Thomas, 278 F.3d at 958-59; Smolen, 80 F.3d at 1284; SSR 96-7p.

Next, the ALJ also discounted Plaintiff's credibility as to his subjective symptoms based upon evidence of exaggeration, Plaintiff's ability to perform past work, and the implausibility of Plaintiff's daily activities.  (AR at 20-21.)  First, the ALJ relied upon the opinions of Drs. Fabella and Coldman to evidence exaggeration of Plaintiff's symptoms.  (Id.)  The ALJ provided, "The reports of both consultative physical and mental examiners noted poor effort by [Plaintiff]." (Id.)  Dr. Fabella noted that Plaintiff's limitation in range of motion was "probably due to poor effort on his part."  (Id. at 187.)  Dr. Coldman also indicated that Plaintiff's cognitive test results "should be interpreted with caution"due to Plaintiff's poor effort.  (Id. at 181-82.)  Drs. Fabella and Coldman, thus, both suggested that Plaintiff was exaggerating his symptoms.  Additionally, the ALJ relied on evidence of Plaintiff's past work as construction worker as probative as to

Plaintiff's "ability to function on a higher level than that of mild mental retardation." (Id. at 21, 179, 182); see also Thomas, 278 F.3d at 958-59; Smolen, 80 F.3d at 1284. Finally, the ALJ relied upon the implausibility of Plaintiff's daily activities to support his credibility determination. (Id. at 20-21.) Plaintiff and his sister indicated that his daily activities consist of watching television all day, with one or two breaks to open the front door or step outside. (Id. at 258.) The ALJ opined:

> If these accounts of [Plaintiff] and his sister were to be believed, it would appear that [Plaintiff] is an invalid based on his alleged physical and mental limitations. The medical evidence of record hardly supports such findings.

(Id. at 20.) The objective medical record, as stated above, supports such a finding. See supra, Discussion, Part III.A-B. Accordingly, the ALJ properly relied upon evidence of exaggeration, Plaintiff's past work, and the implausibility of Plaintiff's daily activities to discount Plaintiff's credibility.

Based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility regarding his contentions of disabling orthopedic and cognitive impairments. See Cotton, 799 F.2d at 1407; see also Smolen, 80 F.3d at 1281; Dodrill, 12 F.3d at 918; Bunnell, 947 F.2d at 343; SSR 96-7p. Thus, there was no error.

## C.   **The ALJ Failed to Develop the Record Regarding the Medical Necessity of an Ambulatory Assistive-Device.**

On several occasions, Plaintiff was prescribed the use of a cane to assist in ambulation. (AR at 220, 240, 243.) Plaintiff also testified that he required a cane as an ambulatory assistive-device. (Id. at 261.) Additionally, several treating and

14

consultative physicians noted that Plaintiff ambulated with a cane.[10]  (Id. at 180, 183, 227.)  With respect to the assistive device, the ALJ stated, "[Plaintiff] uses a single point cane that he was prescribed to walk."  (Id. at 19.)  Plaintiff contends that the ALJ failed to properly consider the medical necessity of an assistive device for ambulation, and the extent, if any, the assistive device would alter the assessment of Plaintiff's RFC.  (JS at 14-18.)  The Court agrees.[11]

The ALJ's failure to properly develop the record as to the medical necessity of an ambulatory assistive-device constitutes sufficient reason to remand the case for further administrative hearing.  See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003 ) (The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where plaintiff is represented by counsel); see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)).  On remand, the ALJ will have an opportunity to address this issue again and should consider this issue when determining the merits of Plaintiff's case on remand.

**D.**   **This Case Should Be Remanded for Further Administrative Proceedings.**

The law is well established that remand for further proceedings is appropriate where additional proceedings could remedy defects in the

---

[10]  Plaintiff argues that Dr. Fabella provided "internally inconsistent" statements as to Plaintiff's gait and balance.  (JS at 14.)  However, the Court notes that Dr. Fabella's report was later revised to strike out the last sentence under gait and balance.  (AR at 178, 185.)  The report should read, "Gait is very slow alleging back pain. [Plaintiff] had a hard time getting to and from the examining table."  (Id.)

[11]  The Court is not making a determination that an assistive device for ambulation is medically necessary, or that an assistive device alters the ALJ's RFC assessment.

1    Commissioner's decision.  <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984).

2    Remand for payment of benefits is appropriate where no useful purpose would be

3    served by further administrative proceedings, <u>Kornock v. Harris</u>, 648 F.2d 525,

4    527 (9th Cir. 1980); where the record has been fully developed, <u>Hoffman v.</u>

5    <u>Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would

6    unnecessarily delay the receipt of benefits.  <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719

7    (9th Cir. 1985).  Here, the Court concludes that further administrative proceedings

8    would serve a useful purpose and remedy the administrative defects discussed

9    herein.

10                                          **IV.**

11                                        **ORDER**

12          Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS

13    ORDERED that Judgment be entered reversing the decision of the Commissioner

14    of Social Security, and remanding this matter for further administrative

15    proceedings consistent with this Memorandum Opinion.

16

17    Dated: October 30, 2009

18                                  HONORABLE OSWALD PARADA
                                    United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

                                          16